UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**AMY COLE and ROBERT A. PELLETIER, JR.,**

    **Plaintiffs,**

v.            Case No.: 6:24-cv-01852-PGB-LHP

**WESTGATE RESORTS, LTD.,**

    **Defendant.**

_____/

# ORDER

This cause comes before the Court on Defendant Westgate Resorts, LTD.'s ("**Defendant**") Motion to Dismiss Plaintiffs' Complaint. (Doc. 41 (the "**Motion**")). Plaintiffs Amy Cole and Robert A. Pelletier, Jr. (collectively, the "**Plaintiffs**") responded in opposition (Doc. 47), and Defendant replied thereto (Doc. 61).[1] Upon consideration, the Motion is due to be granted.

## I.   BACKGROUND[2]

This lawsuit arises from Plaintiffs' execution of a contract with Defendant to purchase a Westgate timeshare. (*See* Doc. 1-1 (the "**Complaint**")). Defendant is a Florida-based entity that develops and sells timeshare interests across various resort properties. (*See id.* ¶¶ 2–3, 12–13). Plaintiffs purchased one of Defendant's

---

[1]   The Court granted Defendant leave to file a reply. (*See* Docs. 54, 55).

[2]   This account of the facts comes from Plaintiffs' Complaint. (Doc. 1-1). The Court accepts well-pled factual allegations therein as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

timeshares on June 4, 2018, while on vacation in Gatlinburg, Tennessee at Defendant's Smoky Mountain Resort (the "**Resort**"). (*Id.* ¶ 14).

According to the Complaint, Defendant regularly sells its timeshares "through sales presentations using inducements and high-pressure sales tactics" to "deceive prospective purchasers into buying timeshare vacation programs." (*Id.* ¶ 12). Defendant hosted one of these sales presentations at the Resort, marketing it to Plaintiffs as a short presentation regarding timeshares. (*Id.* ¶¶ 14–15). Plaintiffs allege that the presentation lasted approximately seven hours and involved at least five staff members (hereinafter, the "**staff**") who attempted to convince Plaintiffs to buy a timeshare. (*Id.* ¶¶ 16, 31–32). Plaintiffs allege Defendant's staff made misleading statements about the value, benefits, and terms of the timeshare purchase. (*Id.* ¶¶ 17a–17e, 76a–76d).

At the end of the presentation, Defendant's staff presented a digital contract for the purchase of a timeshare. (*Id.* ¶¶ 31–32). Plaintiffs signed the contract (Doc. 41-1 ("**Purchase Agreement**")) via electronic signatures on a tablet. (*Id.* ¶ 25). Plaintiffs claim the sales team controlled the tablets during the signing process, made "short general categor[ical] statements" regarding the content of each section of the Purchase Agreement, and then presented the tablet to Plaintiffs for them to sign. (*Id.* ¶¶ 14–15, 30).

The execution of the Purchase Agreement lasted approximately fifteen minutes. (*Id.* ¶ 26). During this execution, Plaintiffs allege that Defendant's staff concealed key terms and did not allow Plaintiffs to review any documents they were

2

signing. (*Id.* ¶¶ 27–28, 36–41). Plaintiffs present that Defendant's staff also failed to explain the relevant terms of the Purchase Agreement, including the "successor liability clause," an "arbitration clause," a "mitigation limitation clause," and the choice of law and venue provisions. (*Id.* ¶¶ 29, 195). Additionally, Plaintiffs allege that Defendant's staff failed to provide required disclosures and documentation. (*Id.* ¶¶ 18–22, 33–35). Specifically, Plaintiffs allege that Defendant's staff failed to disclose whether they held valid real estate licenses and failed to provide disclosure forms. (*Id.* ¶¶ 33–34, 157–60). Plaintiffs also allege that Defendant's staff failed to provide a Public Offering Statement ("**POS**"), as required under the Florida Vacation Plan and Timesharing Act (the "**Florida Timeshare Act**"). (*Id.* ¶ 80). Plaintiffs allege Defendant's staff did not explain the implications of the Real Estate Settlement Procedures Act ("**RESPA**"). (*Id.* ¶ 130). Lastly, Plaintiffs allege Defendant's staff failed to provide closing disclosures, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("**Dodd-Frank**"). (*Id.* ¶¶ 134–135, 141).

Five years after the purchase, in June of 2023, Plaintiffs consulted the Timeshare Law Firm. (Doc. 47, p. 6). Plaintiffs allege this consultation is when they first became aware of their claims against Defendant. (*Id.* at pp. 6–7, 9). Accordingly, Plaintiffs initiated this action against Defendant in the Ninth Judicial Circuit Court of Florida, in and for Orange County, Florida on September 17, 2024. (Doc. 1-1). Defendant then removed the action to this Court on October 14, 2024. (Doc. 1).

3

Plaintiffs plead thirteen counts: negligent and fraudulent misrepresentation (Counts I and II); negligent and fraudulent concealment of public offering statement (Counts III and IV); negligent and fraudulent concealment of successor liability (Counts V and VI); statutory violations of RESPA (Count VII) and Dodd-Frank (Count VIII); negligent misrepresentation and "intentionally negligent" concealment of licensure (Count IX); violation of Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**") (Count X); concealment of the arbitration clause and mitigation limitation clauses (Count XI); violations of the Florida Timeshare Act (Count XII); and a claim for attorneys' fees and punitive damages (Count XIII). (*See generally* Doc. 1-1).

Defendant now moves to dismiss Plaintiffs' Complaint. (Doc. 41). Plaintiffs responded in opposition, Defendant replied, and the matter is thus ripe for review. (Docs. 47, 61).

## II.  STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

4

the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. H*unnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III. DISCUSSION

Defendant moves to dismiss Plaintiffs' Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (*See generally* Doc. 41.). Additionally, Defendant argues that the Complaint should be dismissed on various grounds, including that Plaintiffs improperly rely on Florida substantive law, fail

5

to state cognizable claims, and assert claims that are barred by the relevant statutes of limitations.[3] (*Id.* at pp. 2–3).

## A. Governing Law

As an initial matter, the Court addresses the parties' dispute as to the applicable state law. Plaintiffs invoke Florida law as the basis for several claims. (*See* Doc. 1-1, ¶¶ 48, 80, 100, 151, 175, 197). Plaintiffs argue that Florida law applies based on a choice-of-law provision in the Purchase Agreement. (Doc. 47, pp. 8–9). Defendant contends that Florida law does not apply to Plaintiffs' claims because the claims are not based on the Purchase Agreement itself, and thus, the choice-of-law provision does not control. (Doc. 61, p. 5). Instead, Defendant posits that Tennessee law applies because the timeshare is located in Tennessee and the Purchase Agreement was executed in Tennessee, and thus, Tennessee has the most significant relationship to the dispute. (*Id.*).

Ultimately, Plaintiffs' claims fail regardless of whether Tennessee or Florida law applies. The Court thus assumes—without deciding—that Florida law applies, as Plaintiffs posit.

---

[3]   While Defendant presents various grounds for dismissal, the Court limits its analysis to the arguments that are dispositive of Plaintiffs' claims.

> **B. Counts I–IV, IX: Negligent Misrepresentation and Fraudulent Misrepresentation; Negligent and Fraudulent Concealment of POS; Negligent Misrepresentation and "Intentionally Negligent" Concealment of Licensure**

Counts I, II, II, IV, and IX are due to be dismissed because they are barred by the statute of limitations. In these counts, Plaintiffs assert claims for negligent misrepresentation; fraudulent misrepresentation; negligent concealment of POS; fraudulent concealment of POS; and negligent misrepresentation and "intentionally negligent" concealment of licensure. (*See* Doc. 1-1, ¶¶ 45–110, 149–73). These claims are based on alleged misstatements and omissions Defendant's staff made during the timeshare sales presentation and execution of the Purchase Agreement on June 4, 2018. (*See id.*).

Under Florida Statute § 95.11(3)(j), "[a] legal or equitable action founded on fraud" shall be commenced within four (4) years. Additionally, under Florida law, "an action for negligent misrepresentation sounds in fraud rather than negligence." *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993). Thus, Plaintiffs' claims for both negligent and fraudulent misrepresentation are subject to a four-year statute of limitations. The statute of limitations begins to run "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." *Id.* at 1511.

However, Plaintiffs argue that their claims are not time barred due to Florida's delayed discovery rule. (Doc. 47, p. 6). "The delayed discovery doctrine generally provides that a cause of action does not accrue until the plaintiff[s] either

7

know or reasonably should know of the tortious act giving rise to the cause of action." *R.R. v. New Life Cmty. Church of CMA, Inc.*, 303 So. 3d 916, 921 (Fla. 2020). Plaintiffs argue the limitations period did not begin until June of 2023, when they consulted legal counsel and became aware of Defendant's alleged misrepresentations. (Doc. 47, p. 6). Plaintiffs' argument is unavailing. *See Smith v. Westgate Resorts, Ltd.*, No. 6:25-CV-189, 2025 WL 1248642, at *5 (M.D. Fla. Apr. 30, 2025) (declining to apply the discovery rule to similar claims because the plaintiffs had actual notice of the facts that form the basis of the claims at the time they purchased the timeshare). The delayed discovery rule does not toll the statute of limitations where a plaintiff merely lacks legal awareness of a claim. *See id.*; *see also Dovenmuehle, Inc. v. Laws. Title Ins. Corp.*, 478 So. 2d 423, 424–25 (Fla. 4th DCA 1985) ("[M]ere ignorance of the existence of the cause of action without more will not postpone the operation of the statute of limitations").

As the basis of Counts I and II, the misrepresentation claims, Plaintiffs cite to several statements Defendant's staff members made during the sales presentation. (*See* Doc. 1-1, ¶¶ 50a–50e). Similarly, Counts III and IV are premised on the staff's alleged failure to provide Plaintiffs with a POS at or before the time of sale.[4] (*Id.* ¶¶ 80–90). Lastly, Count IX is based on the staff's alleged failure to

---

[4] The Court's analysis of Counts III, IV, and IX proceeds on the understanding that Plaintiffs assert "negligent" and "fraudulent" concealment as omissions constituting a misrepresentation. As a general matter, "fraudulent concealment" is typically asserted as an affirmative defense rather than an independent cause of action, but Plaintiffs do not appear to have pled it as such here. *See generally S.A.P. v. State, Dep't of Health & Rehab. Servs.*, 704 So. 2d 583 (Fla. 1st DCA 1997). Moreover, to the extent that Counts III and IV are predicated on Defendant's alleged violation of the Florida Timeshare Act, under § 721.20(5), these claims are also subject to dismissal for the reasons stated in Section III.D.2

8

disclose whether they had real estate licenses and failure to provide a real estate agency disclosure. (*Id.* ¶¶ 159–61). Thus, all factual allegations for Counts I through IV and Count IX rest on events and facts known to Plaintiffs at the time of the Purchase Agreement's execution in 2018. Moreover, the Complaint alleges no facts that reasonably would have prevented Plaintiffs from bringing suit within the limitations period.

Accordingly, Counts I, II, III, IV, and IX are time barred under § 95.11(3)(j) and must be dismissed.

### C.   Counts V and VI: Negligent and Fraudulent Concealment

Counts V and VI, negligent and fraudulent concealment of successor liability, are also due to be dismissed. (*See* Doc. 1-1, ¶¶ 111–27). In these counts, Plaintiffs contend that Defendant's staff concealed a provision binding Plaintiffs' children to the Purchase Agreement after Plaintiffs' deaths. (Doc. 1-1, ¶¶ 113–14, 122–25). Plaintiffs specifically allege that:

> If Plaintiffs had known that the subject timeshare was not an asset and that they could pass on to their heirs who could optionally refuse to take the bequest, but was instead forced into joint and several liability of pure debt with no resale value that can attach to their children and their associated interests, then they would not have purchased the subject timeshare.

(*Id.* ¶ 114). However, Plaintiffs have not identified any clause in the Purchase Agreement that could reasonably be construed as creating automatic, enforceable

---

below. Likewise, insofar as Count IX relies on the theory that the alleged licensure violation can "render the contract void under the [Florida] Timeshare Act," this claim also fails for the reasons set forth in Section III.D.2.

successor liability. The Court finds no language in the Purchase Agreement that would subject Plaintiffs' children to any binding financial obligation or legal compulsion to accept ownership or debt upon Plaintiffs' death. *See Smith*, 2025 WL 1248642, at *3–4 (dismissing nearly identical claims against the same defendant, regarding a materially similar purchase agreement, where the court found no contractual provision imposing such liability).

Even assuming such a clause existed and was adequately plead, Counts V and VI are barred by the statute of limitations. *See* FLA. STAT. § 95.11(3)(j). Claims "sounding in fraud" are subject to a four-year statute of limitations. *Souran*, 982 F.2d at 1511. As explained above, Plaintiffs executed the Purchase Agreement in June of 2018 but did not file the instant action until 2024, and Plaintiffs did not plead sufficient facts to warrant equitable tolling.

Accordingly, Counts V and VI are due to be dismissed.

### D. Counts VII–VIII: Violations of RESPA and Dodd-Frank

Next, Counts VII and VIII under RESPA and Dodd-Frank, respectively, fail because they allege violations of statutes that provide no cognizable civil remedy.

#### 1. Count VII: RESPA

Plaintiffs' RESPA claim is based upon Defendant's alleged failure to explain RESPA to Plaintiffs during the sales presentation. (Doc. 1-1, ¶ 130). Specifically, Plaintiffs argue that the implications of RESPA were not explained to them during the presentation and that Plaintiffs did not know their rights under RESPA. (*Id.* ¶¶ 120–131).

10

Under RESPA, a plaintiff's private right of action is limited to three types of wrongful acts:

> (1) payment of a kickback and unearned fees for real estate settlement services; (2) requiring a buyer to use a title insurer selected by the seller; and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan.

*Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1163 (N.D. Cal. 2011). Plaintiffs' allegations do not amount to any of the three actionable wrongful acts. A failure to explain RESPA is not a basis for a RESPA claim. *See Smith*, 2025 WL 1248642, at *3; *Ambriz v. Equifirst Corp.*, No. 09cv2387, 2010 WL 2754248, at *1 (S.D. Cal. July 9, 2010).[5] Thus, even accepting all factual allegations as true, Plaintiffs fail to state a cause of action under RESPA.

    2.    *Count VIII: Dodd-Frank*

In Count VIII, Plaintiffs allege Defendant violated Dodd-Frank. (*See* Doc. 1-1, ¶¶ 133–48). In support, Plaintiffs allege Defendant's staff: (1) failed to provide Plaintiffs with a closing disclosure before consummation of the Purchase Agreement; and (2) used unfair or deceptive practices in connection with the sale. (*Id.* ¶¶ 134–35, 138). However, Plaintiffs cite no authority demonstrating that Dodd-Frank provides a private cause of action for individual consumers in this context. (*See id.*).

---

[5] In *Smith*, the facts alleged pertaining to the claims under RESPA and Dodd-Frank were identical to those alleged here. 2025 WL 1248642, at *3. The court in *Smith* similarly found that RESPA did not provide a cognizable civil remedy and that Dodd-Frank did not apply because the plaintiffs failed to allege they were whistleblowers. *Id.*

11

"While there is no doubt that Dodd-Frank creates a private cause of action for whistleblowers, courts have been reluctant to find that Dodd-Frank created any other private cause of action." *Davis v. Bank of Am. Mortg. Servicer*, No. 8:19-CV-1582-T-02, 2019 WL 11502853, at *2 (M.D. Fla. Oct. 24, 2019), *report and recommendation adopted*, No. 8:19-CV-1582-T-02, 2019 WL 11502804 (M.D. Fla. Nov. 15, 2019) (quoting *Sims v. New Penn Fin. LLC*, No. 3:15-CV-263, 2016 WL 6610835, at *6 (N.D. Ind. Nov. 8, 2016)).

Here, Plaintiffs do not allege any facts that demonstrate they are whistleblowers, and Dodd-Frank does not provide a private cause of action for the conduct alleged in the Complaint. *See Smith*, 2025 WL 1248642, at *3 (dismissing Dodd-Frank claim because plaintiffs did not allege they were whistleblowers); *see also Davis*, 2019 WL 11502853, at *2.[6]

Accordingly, because the statutes Plaintiffs rely upon do not provide cognizable civil remedies, Count VIII is due to be dismissed.

### E.  Counts X and XII: Violations of the FDUTPA and the Florida Timeshare Act

Counts X and XII are due to be dismissed because the Florida Statutes Plaintiffs rely upon do not apply to the parties' out-of-state transaction.

#### 1.  *Count X: FDUTPA*

In Count X, Plaintiffs allege that Defendant violated the FDUTPA by making false and misleading statements during the sales presentation and by employing

---

6   *See supra* note 5.

12

high-pressure sales tactics to induce them into signing the Purchase Agreement. (*See* Doc. 1-1, ¶¶ 175–90). Plaintiffs contend these acts constitute "unfair" and "deceptive" conduct under the FDUTPA. (*Id.* ¶ 190).

A claim for damages under the FDUTPA requires: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). However, the FDUTPA applies only to actions that occurred within the state of Florida. *Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318, 2009 WL 3861450, at *6 (S.D. Fla. Nov. 17, 2009) (citing *Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen.*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000)).

Plaintiffs argue that the FDUTPA is applicable to the parties' transaction, citing only the Florida choice-of-law provision to support the general proposition that Florida substantive law applies. (Doc. 47, pp. 8–9). However, as this Court has previously noted, a contractual choice-of-law clause does not extend the reach of Florida's substantive consumer protection laws to conduct occurring outside the state. *See Lingard v. Holiday Inn Club Vacations*, No. 6:23-CV-323, 2023 WL 4661963, at *11 (M.D. Fla. July 20, 2023) ("Florida provides no relief under the FDUTPA for claims that arose due to conduct that occurred outside its territorial boundaries; the underlying contractual choice of law provision and [d]efendants' principal place of business does not alter Florida's substantive law . . . ."). The parties do not dispute that the Purchase Agreement was executed in Tennessee. (*See* Doc. 1-1, ¶ 14; Doc. 41, p. 9). The alleged conduct supporting the FDUTPA

13

claim occurred during a sales presentation and the subsequent execution of the Purchase Agreement in Tennessee. (*See* Doc. 1-1, ¶¶ 14–15).

Moreover, the statute of limitations for FDUTPA claims is four years, and the doctrine of delayed discovery does not apply to FDUTPA claims. FLA. STAT. § 95.11(3); *Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip. Co.*, 793 So. 2d 1127, 1128 (Fla. 5th DCA 1991). Plaintiffs' FDUTPA claim is based on conduct that occurred during the sales presentation in 2018. (Doc. 1-1, ¶¶ 175–90). Thus, even assuming Plaintiffs properly pled their FDUPTA claim, it would nonetheless be barred by the relevant statute of limitations.

Accordingly, Count X is due to be dismissed.

2. *Count XII: Florida Timeshare Act*

In Count XII, Plaintiffs allege that Defendant violated the Florida Timeshare Act. (*See* Doc. 1-1, ¶¶ 197–229); FLA. STAT. §§ 721.02–721.98. In support, Plaintiffs allege that Defendant's staff failed to comply with real estate licensure requirements and disclosure obligations during the timeshare transaction. (*Id.*).

The Florida Timeshare Act sets forth a "consistent method of regulation" for timeshare practices within Florida, and "safeguard[s] Florida's tourism industry and the state's economic well-being." FLA. STAT. § 721.02. Under its expressed terms, the Florida Timeshare Act only applies to timeshares "located within" or "offered within" the state of Florida. *See* FLA. STAT. § 721.03; *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, No. 18-80311-CIV, 2020 WL 5514158, at *3 (S.D. Fla. July 31, 2020).

Plaintiffs contend they purchased a "multisite timeshare plan," citing to the Florida Timeshare Act's provisions relating to the sale of multistate timeshares. (Doc. 1, ¶¶ 9, 83, 106–07). However, according to the Purchase Agreement, Plaintiffs did not purchase a multistate timeshare plan.[7] (Doc. 41-1). A "multisite timeshare plan" is defined as "any method, arrangement, or procedure with respect to which a purchaser obtains, by any means, a recurring right to use and occupy accommodations or facilities of more than one component site." FLA. STAT. § 721.52(4). Here, Plaintiffs purchased a timeshare interest in Gatlinburg, Tennessee, a single site. (Doc. 41-1). Neither Plaintiffs' Complaint nor the language of the Purchase Agreement indicates that Plaintiffs purchased the rights to use and occupy accommodations at more than one site. (*See id.*; Doc. 1-1). Plaintiffs' timeshare is not located in Florida, and it is undisputed that Plaintiffs purchased the timeshare in Tennessee. (*See* Doc. 1-1, ¶ 14; Doc. 41, p. 9). Moreover, the alleged facts involving the execution of the Purchase Agreement took place outside of

---

[7] The relevant portion of the Purchase Agreement states:

> Purchaser (s) agree (s) to purchase and Seller agrees to sell to Purchaser one (1) or more timeshare interests in the Time Share Accommodations known as WESTGATE SMOKY MOUNTAIN RESORT AT GATLINBURG, a Timeshare Resort, 915 Westgate Resorts Road, Gatlinburg, Tennessee 37738, pursuant to the terms and conditions of this Contract for Purchase and Sale and the Timesharing Plan, a copy of which is included with the Public Offering Statement that each Purchaser receives upon execution of a Contract for Purchase and Sale, together with all improvements, easements, rights, privileges and appurtenances pertaining to said Timeshare Interest as set forth in the Timesharing Plan and all Exhibits thereto. 1 – BEDROOM DELUXE.

(Doc. 41-1).

15

Florida. (*See id.*). Thus, the Florida Timeshare Act is not applicable to the parties' timeshare transaction.

Accordingly, Count XII is also due to be dismissed.

### D. Count XIII: Plaintiffs' Request for Attorney Fees, Cost, Damages, and Punitive Damages Fails Because It is Not a Cause of Action

Count XIII, seeking attorney's fees, costs, damages, and punitive damages, is not an independent cause of action, but rather a request for remedies. (*See* Doc. 1-1, ¶¶ 230–32). "A claim for damages must be linked to a substantive claim for relief rather than being asserted as a freestanding cause of action." *Foley v. Orange County*, No. 6:12-CV-269, 2012 WL 6021459, at *7 (M.D. Fla. Dec. 4, 2012). Because all substantive claims in this action have been dismissed, these remedies are no longer at issue. *See Cooper Interconnect, Inc. v. Glenair, Inc.*, No. CV1408018, 2015 WL 13722129, at *4 (C.D. Cal. Feb. 3, 2015).

For the reasons set forth above, the Court concludes that each of Plaintiffs' claims are subject to dismissal. Thus, Defendant's Motion is due to be granted, and Plaintiffs' Complaint is due to be dismissed with prejudice.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Plaintiffs' Complaint (Doc. 41) is **GRANTED**.

2. Plaintiffs' Complaint (Doc. 1-1) is **DISMISSED WITH PREJUDICE**.

3. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on August 24, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties